David A. Chami
AZ Bar No. 027585
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, AZ 85258
T: (480) 757-6367
F: (480) 581-1721
E: dchami@cjl.law
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kenia Matatov,<br>*on behalf of herself and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>Equifax Information Services, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>FCRA, 15 U.S.C. § 1681 *et seq.* |

COMES NOW, Plaintiff Kenia Matatov ("Plaintiff" or "Ms. Matatov") on behalf of herself and all similarly situated individuals, alleging the following claims against Defendant Equifax Information Services, LLC ("Defendant" or "Equifax").

**INTRODUCTION**

1. This is a consumer class action brought against Defendant Equifax for willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b). This lawsuit challenges Equifax's failure to maintain reasonable procedures to ensure that it does not improperly associate a consumer's social security number with a person who is deceased.

1

## JURISDICTION AND VENUE

2. Jurisdiction of the court arises under 28 U.S.C. § 1331; 15 U.S.C. § 1681.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

4. Defendant is a registered business entity with the Arizona Corporation Commission. Defendant is authorized to transact and does transact business within the geographic confines of the District of Arizona. Defendant operates throughout Arizona, including through related business entities it wholly controls.

5. Personal jurisdiction and venue is established by the presence of Ms. Matatov and Equifax within the District of Arizona.

## PARTIES

6. Plaintiff Kenia Matatov ("Ms. Matatov") is a natural person residing in Glendale, Arizona.

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

8. Defendant Equifax is a "person" as defined by 15 U.S.C. § 1681a(b) and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

9. Defendant Equifax is headquartered at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

10. Defendant acted through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

# **FACTUAL ALLEGATIONS**

11. Ms. Matatov incorporates the above paragraphs of this Complaint as though they are fully stated herein.

12. In or around November 2019, Ms. Matatov pulled her Equifax credit report.

13. Upon review, Ms. Matatov learned that Equifax was inaccurately reporting a Commonwealth Financial Systems collections account (the "Account"), opened in July 2019, with a balance of $1,800.

14. On or about January 8, 2020, Ms. Matatov sent a letter to Equifax to dispute the Account.

15. In her dispute letter, Ms. Matatov indicated that she believed the Commonwealth Financial Systems was inaccurate, and she requested verification of the debt associated with the tradeline.

16. In Ms. Matatov's dispute letter, she provided her full name, birthdate, home address, and social security number. Ms. Matatov also attached a recent utility bill and copy of her driver's license to her dispute letter to ensure Defendant could identify her.

17. On or about January 17, 2020, Defendant responded to Ms. Matatov's dispute with a one-page letter including, among other things:

    a. A clear indication that the letter was addressed to Ms. Matatov by name.

    b. A confirmation that Defendant had received Ms. Matatov's dispute letter.

    c. The Social Security Administration supposedly had Ms. Matatov's Social Security number associated with a person reported as deceased.

      d. Instructions for Ms. Matatov to contact the Social Security Administration and to send Defendant a "Report of Confidential Social Security Benefit Information" form to clarify her "current status" as well as a special form provided by Equifax.

18. Ms. Matatov was shocked to learn that Equifax had associated her social security number with that of a deceased person. When Plaintiff reviewed her Equifax consumer report six months earlier, there was no indication that her social security number was associated with a deceased person or otherwise unverifiable.

19. Upon information and belief, Defendant had no reliable information upon which to form its belief that Ms. Matatov's social security number was associated with a deceased individual.

20. Equifax does not obtain any social security information directly from the Social Security Administration ("SSA"), but rather through a third party.

21. Upon information and belief, Equifax's contract with the third-party vendor that furnished the inaccurate information about Plaintiff disclaims accuracy of social security information.

22. Upon information and belief, despite the fact that Equifax knows that the information it obtains from its third-party vendor may be inaccurate, it makes no effort to verify the information's veracity before including it in a consumer's credit file. Therefore, Defendant's blind reliance on the third-party vendor is unreasonable.

23. Instead of maintaining reasonable procedures to ensure that the social security information Equifax purchases is accurate before including it in consumer reports that it

- 4 -

sells for a profit, Equifax expects individual consumers to personally contact the SSA to verify that they are not, in fact, dead.

24. Thereafter, Defendant Equifax asks the **consumer** to provide a **confidential** report from the SSA, which includes information that Equifax is not entitled to, to prove that their social security number belongs to a living person.

25. Ms. Matatov has not and does not receive social security benefits, nor does she have a pending claim for benefits.

26. Ms. Matatov nonetheless contacted the Social Security Administration ("SSA"), which informed her that there was no record indicating that her social security number was associated with a deceased person.

27. The SSA representative that Plaintiff spoke to said that Equifax had made a "human error" that resulted in the improper association of her social security number with a deceased person.

28. Upon information and belief, Equifax's loose matching algorithms have combined Ms. Matatov's consumer information and with that of another individual.

29. Equifax's letter indicated that the SSA supposedly associated Ms. Matatov's social security number with that of a deceased person.

30. Ms. Matatov's social security number was not, in fact, associated with a deceased individual as confirmed by the SSA.

31. Upon information and belief, Defendant Equifax and non-parties Experian and Trans Union share information about consumers with each other.

32. Upon information and belief, neither Experian nor Trans Union indicated that Ms.

Ms. Matatov's social security number was associated with a deceased individual.

33. Upon information and belief, Equifax fails to maintain reasonable procedures to ensure that a consumer's personal identifiers are not erroneously associated with those of a deceased person.

34. Equifax has been on actual notice and for many years that its loose matching algorithms frequently combine information about completely different consumers, often falsely matching a **living** consumer's personal identifiers with those of a **dead** person.

35. Upon information and belief, Equifax's procedures and/or algorithms often mismatch the social security numbers of people with traditionally ethnic last names.

36. Specifically, Equifax has known for **years** that its procedures or algorithms often incorrectly associate social security numbers belonging to **living** persons who immigrated to the United States and/or received social security numbers in or around 2011 with a deceased person's personal identifiers.

37. Ms. Matatov was a DACA recipient who received her social security number in or around 2011.

38. Equifax has been sued repeatedly for including inaccurate social security information furnished by the third-party vendor in its consumer reports.

39. Upon information and belief, Equifax regularly sells consumer reports to its customers in the banking and debt collection industries with as little as a name and any previous address.

40. Despite the onerous requirements that Equifax imposed upon Plaintiff to prove that she was in fact, alive, Equifax readily sold one or more consumer reports that included

Plaintiff's credit information without asking the customer(s) to provide Plaintiff's social security number.

41. Upon information and belief, Equifax sold Ms. Matatov's consumer report to its third-party subscriber and customer, Cisco Credit, without verifying that her social security number belonged to a living person.

42. Upon information and belief, Equifax also sold Plaintiff's consumer information to one or more third parties while reporting that her social security number belonged to a deceased person.

43. In or around the beginning of 2020, Plaintiff applied for and was denied a Chase credit card. Upon information and belief, Plaintiff's credit application was denied in whole or in part because of the erroneous information in Equifax's credit file.

44. In or around 2013, Plaintiff applied for a student loan with Mountain America Credit Union and was denied. Consequently, Plaintiff was not able to pursue her dream of earning a college degree.

45. Upon information and belief, Plaintiff's credit application was denied in whole or in part because of the erroneous information in Equifax's credit file.

46. Upon information and belief, Equifax continues to associate a variety of consumer credit information with Plaintiff's personal identifiers while simultaneously alleging that her social security number belongs to a deceased person.

47. Upon information and belief, Equifax knowingly maintains unreasonable and deficient procedures to avoid the expense of independently verifying the social security information it receives from third-party vendors.

48. Moreover, Defendant unreasonably opts for consumers to undergo the onerous and unjustified verification of their identity through the SSA to avoid conducting a reasonable investigation of the information itself.

49. It is wholly unreasonable for Defendant to shift the burden of ensuring maximal accuracy of credit information to individual consumers.

50. Further, Equifax has no right to a consumer's confidential social security benefits report.

51. Equifax's actions have caused Plaintiff and the putative class to suffer damages by failing to maintain reasonable procedures in the collection and publication of consumer information, in violation of 15 U.S.C. § 1681e(b).

## CLASS ALLEGATIONS

52. Plaintiff incorporates the above paragraphs of this Complaint as though fully stated herein.

53. **The Class.** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Brings this action for herself and on behalf of a class (the "Class") initially defined as follows:

All consumers residing in the United States who were the subject of a consumer report (1) in the five years preceding the date of class certification, (2) who sent a dispute to Equifax about an inaccurate item reporting on the consumer's credit report; (3) for whom Equifax asked to contact the Social Security Administration to verify that their social security number belonged to a living person (4) and provide a "Report of Confidential Social Security Benefits" to prove that their social security number belonged to a living

person.

54. **Numerosity.** Fed. R. Civ. P. 23(a)(1). Upon information and belief, the Plaintiff alleges that Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

55. **Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

   a. Whether Equifax accurately associated the consumer's social security number with a deceased person's;

   b. Whether the Social Security Administration was the actual source of the information associating the consumer with a deceased social security number;

   c. Whether Equifax was reasonable in relying on the information it obtained about consumer social security numbers;

   d. Whether Equifax was justified in forcing the consumer to obtain information it requested from the Social Security Administration;

   e. Whether the type of information that Equifax required of the consumer was the type of information that was relevant to whether the consumer was deceased;

   f. Whether Equifax informed the furnisher of the social security information

about the consumer dispute;

g. Whether Equifax improperly shifted the burden of proving that its report of social security information was inaccurate onto the consumer;

h. Whether Equifax had a procedure in place assure maximal accuracy of the consumer social security information;

i. Whether Equifax had notice that its social security number information was flawed;

j. Whether Equifax's violation was willful and/or in reckless disregard of the consumer's rights.

56. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Upon information and belief, Equifax sent consumers who were disputing inaccurate credit information the same form letter; Equifax indicated that it would not commence the reinvestigation of the disputed reporting until the consumer obtained information from the Social Security Administration. For class certification purposes, Plaintiff seeks only statutory and punitive damages. Plaintiff will only seek individual actual damages if Class Certification is denied. In addition, Plaintiff is entitled to the same relief as the members of the class.

57. **Adequacy.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; she retained counsel competent and experienced in such litigation; and she intends to prosecute this action vigorously. The

interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

58. **Predominance and Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication for the controversy. It would be virtually impossible for the members of the Class to effectively redress the wrongs done to them on an individual basis.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the Class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

59. **Injunctive Relief Appropriate for the Class.** Fed. R. Civ. P. 23(b)(2). Class certification is appropriate because Defendant has acted on grounds that apply generally to the Class, making it appropriate to award equitable and injunctive relief with respect to Plaintiff and the Class members.

### CLAIM I (CLASS CLAIM)
### Violations of 15 U.S.C. § 1681e(b)

60. Plaintiff incorporates the above paragraphs of this Complaint as though fully stated herein.

- 11 -

61. The foregoing facts establish that Defendant willfully violated 15 U.S.C. § 1681e(b) as to Plaintiff and the Class members when it failed to maintain reasonable procedures to ensure maximal accuracy of the consumer information it assembles and includes in the consumer reports it sells to third parties for a profit. Specifically, Defendant failed to ensure the social security information it purchased from a third-party vendor was accurate before including it in consumers' credit files. Instead of maintaining reasonable procedures to ensure maximal accuracy, Defendant unreasonably shifted the duties imposed on consumer reporting agencies by the FCRA to Plaintiff and the other Class members.

62. Further, Defendant violated 15 U.S.C. § 1681e(b) by providing consumer credit information to its customer(s) **after** allegedly receiving notice that the relevant social security number might not belong to a living person, **before** verifying that the social security number did in fact belong to the specified consumer, who was alive.

63. As a direct result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff and each Class member suffered injuries, including but not limited to: credit denials, emotional distress, mental anguish, stress, embarrassment, and waste of time.

64. Defendant's conduct, actions, and inactions were willful, rendering the Defendant liable for punitive damages to be decided by the court pursuant to 15 U.S.C. § 1681n.

65. In the alternative, Defendant was negligent, rendering the Defendant liable for actual damages under 15 U.S.C. § 1681o.

66. The Plaintiff and each Class member are entitled to statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to § 1681n and or § 1681o.

## **JURY DEMAND**

67. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Kenia Matatov respectfully requests Certification of a class of consumers defined herein, and entry of judgment against Defendant for the following:

    A. Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    B. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    C. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n(c) and 1681o(b);

    D. Actual damages, in the alternative, for all claims if a Class is not certified;

    E. All pre-judgment and post-judgment interest as may be allowed under the law; and

    F. Any other relief that this Court deems appropriate.

RESPECTFULLY SUBMITTED,

Dated: June 22, 2021                    THE CONSUMER JUSTICE LAW FIRM

                                            By:*/s/ David A. Chami*
                                            David A. Chami
                                            AZ Bar No. 027585
                                            Attorney for Plaintiff