David A. Chami
AZ Bar No. 027585
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-2359
E: dchami@cjl.law
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Kenia Matatov,
    *on behalf of herself and all others
    similarly situated,*

                        Plaintiffs,

v.

Equifax Information Services, LLC,

                        Defendant.

**Case No.:** CV-21-01078-PHX-DMF

**CLASS ACTION**

**FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

FCRA, 15 U.S.C. § 1681 *et seq.*

COMES NOW, Plaintiff Kenia Matatov ("Plaintiff" or "Ms. Matatov") on behalf of herself and all similarly situated individuals, alleging the following claims against Defendant Equifax Information Services, LLC ("Defendant" or "Equifax").

## INTRODUCTION

1. This is a consumer class action brought against Defendant Equifax for willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. This lawsuit challenges Equifax's failure to conduct a reasonable reinvestigation of the Plaintiff's and putative class members' disputes because Equifax improperly associated their social security numbers with deceased persons. As a result, not only did Equifax fail to conduct

1

its own reinvestigation, it failed to communicate the disputes to the furnisher of the information as required by the FCRA. The representative Plaintiff also brings an individual action against Equifax for its failure to maintain reasonable procedures to assure the maximum possible accuracy of the information it compiled and sold about her to third parties.

## **JURISDICTION AND VENUE**

2.  Jurisdiction of the court arises under 28 U.S.C. § 1331; 15 U.S.C. § 1681.

3.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

4.  Defendant is a registered business entity with the Arizona Corporation Commission. Defendant is authorized to transact and does transact business within the geographic confines of the District of Arizona. Defendant operates throughout Arizona, including through related business entities it wholly controls.

5.  Personal jurisdiction and venue are established by the presence of Ms. Matatov and Equifax within the District of Arizona.

## **PARTIES**

6.  Plaintiff Kenia Matatov ("Ms. Matatov") is a natural person residing in Glendale, Arizona.

7.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

8.  Defendant Equifax is a "person" as defined by 15 U.S.C. § 1681a(b) and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

9.  Defendant Equifax is headquartered at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

10. Defendant acted through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11. In or around November 2019, Ms. Matatov pulled her Equifax credit report.

12. Upon review, Ms. Matatov learned that Equifax was inaccurately reporting a Commonwealth Financial Systems collections account (the "Account"), opened in July 2019, with a balance of $1,800.

13. On or about January 8, 2020, Ms. Matatov sent a letter to Equifax to dispute the Account.

14. In her dispute letter, Ms. Matatov indicated that she believed the Commonwealth Financial Systems was inaccurate, and she requested verification of the debt associated with the tradeline.

15. In Ms. Matatov's dispute letter, she provided her full name, birthdate, home address, and social security number. Ms. Matatov also attached a recent utility bill and copy of her driver's license to her dispute letter to ensure Defendant could identify her.

16. On or about January 17, 2020, Defendant responded to Ms. Matatov's dispute with a one-page letter including, among other things:

    a.  A clear indication that the letter was addressed to Ms. Matatov by name.

    b.  A confirmation that Defendant had received Ms. Matatov's dispute letter.

    c.  The Social Security Administration reported to Equifax that Ms. Matatov's

Social Security number was associated with a person reported as deceased.

    d. Instructions for Ms. Matatov to contact the Social Security Administration and to send Defendant a "Report of Confidential Social Security Benefit Information" form to clarify her "current status" as well as a special form provided by Equifax.

17. Ms. Matatov was shocked to learn that Equifax had associated her social security number (SSN) with that of a deceased person. When Plaintiff reviewed her Equifax consumer report six months earlier, there was no indication that her social security number was associated with a deceased person or was otherwise unverifiable.

18. Upon information and belief, the information in the letter was false for a number of reasons.  First, Defendant had no reliable information that Ms. Matatov's SSN was associated with a deceased individual.

19. Equifax does not obtain any social security information directly from the Social Security Administration ("SSA"), but rather through a third-party government agency, National Technical Information Services (NTIS).

20.  Upon information and belief, the SSN information that Equifax received from NTIS about the Plaintiff did not include any indication that it was associated with a deceased SSN.

21. Even though there was no reliable information upon which Equifax based its statements, it nonetheless sent Plaintiff the letter indicating that it would not commence the reinvestigation of her dispute until she provided the confidential SSA report.

22. The letter that the Plaintiff received from Equifax is a form letter, which is known at Equifax as the "deceased letter."

23. Upon information and belief, Equifax did not send the actual "deceased letter" to the Plaintiff.

24. Instead, Equifax utilizes different third parties to process consumer disputes including a third party to process the disputes and a third party to print and mail correspondence such as the "deceased letter" to consumers.

25. The individuals who perform the mailroom function receive and open mail, then load dispute mail into the Equifax system called "CCMS."

26. Dispute mail sent by consumers to Equifax is loaded into a CCMS queue and routed to a different third-party dispute processor at an offshore processing center, very likely in India.

27. Neither Equifax, nor its offshore, third-party dispute processor, commenced a reinvestigation of Plaintiff's dispute within 30 days as required by the FCRA.

28. The dispute was not subject to any of the exceptions or extensions of the FCRA's requirement that the CRA commence a reinvestigation of the disputed information within 30 days.

29. Neither Equifax, nor its offshore, third-party processor, promptly sent notice of the dispute to the furnisher of the disputed information within 5 business days as required by the FCRA.

30. Neither Equifax, nor its third-party processor, had any cause to believe that the Plaintiff's dispute was frivolous.

31. The reason that Equifax and its offshore, third-party processor did not commence the reinvestigation of the Plaintiff's dispute was because Equifax created an instruction in

CCMS to processors when they received that allowed them to not promptly reinvestigate disputes made by any consumer with a social security number issued after June 2011.

32. There is no legitimate reason for Equifax's refusal to reinvestigate an otherwise *bona fide* dispute.

33. Upon information and belief, Equifax's purported reason that it required additional proof from Ms. Matatov of her identity was false because Equifax did not have any information that her SSN indicated she was deceased.

34. Upon information and belief, the true reason that Equifax refused to conduct a prompt reinvestigation and to transmit the dispute to the furnisher was because of its unilateral decision to create an "ID Scan Alert" when the date it associated with the issuance of a consumer's SSN was after June 2011.

35. Upon information and belief, the offshore, third-party dispute processors who are likely in India, have access to Equifax's policies and procedures and may exercise discretion when CCMS instructions conflict with other policies and procedures.

36. Upon information and belief, Equifax's offshore, third-party dispute processors decided not to reinvestigate Ms. Matatov's dispute based on the CCMS instructions.

37. Disputes from consumers whose SSNs were issued after June of 2011 triggered the CCMS instruction to the dispute processor to cause the "deceased letter" to be sent requiring the consumer to obtain a confidential social security benefits report.

38. Equifax sought to obtain additional proof of the consumer's identity not because it was associated with a deceased person, but because Equifax decided to not process consumer disputes unless they supplied a confidential social security report.

39. Consumers for whom SSNs were issued since June of 2011 are either children or consumers who obtained SSNs as adults.

40. Consumers who recently obtained SSNs are likely to be immigrants or individuals whose SSNs had to be changed for a reason such as threat to personal safety or ongoing identity theft.

41. Instead of ensuring consumer disputes are reasonably and promptly reinvestigated and transmitted to the furnisher, Equifax delayed such investigation until the Plaintiff and other individual consumers personally contacted the SSA not only to verify that they are not, in fact, dead, but to obtain a confidential report that is not even designed to demonstrate whether the consumer is deceased.

42. Even more unreasonable is that Equifax requires the **consumer** to conduct its investigative obligation by providing a **confidential** report from the SSA, which may or may not exist, which includes information that Equifax is not entitled to, regarding benefits before commencing a dispute.

43. There is no legitimate reason for Equifax to ever request the SSA confidential benefits report from any consumer.

44. Ms. Matatov has not and does not receive social security benefits, nor does she have a pending claim for benefits.

45. Ms. Matatov nonetheless contacted the SSA, which informed her that there was no record indicating that her social security number was associated with a deceased person.

46. Equifax already knew that Ms. Matatov's SSN was not associated with a deceased record because it received deceased records from NTIS.

47. Upon information and belief, Defendant Equifax and non-parties Experian and Trans Union share information about consumers with each other.

48. Upon information and belief, neither Experian nor Trans Union indicated that Ms. Matatov's social security number was associated with a deceased individual.

49. Equifax has been on actual notice and for many years that its loose matching algorithms frequently combine information about completely different consumers, often falsely matching a **living** consumer's personal identifiers with those of a **dead** person.

50. It is possible that Equifax mixed Ms. Matatov with a complete stranger.

51. Upon information and belief, Equifax's procedures and/or algorithms often mismatch the social security numbers of people with traditionally ethnic last names.

52. Ms. Matatov would have been justified in believing that Equifax's loose matching algorithms caused her consumer report to erroneously be matched with a deceased person.

53. Equifax likely did not mismatch Ms. Matatov with a stranger, but rather subjected her to an arbitrary procedure targeted specifically at recent immigrants and people trying to protect their privacy and personal safety.

54. Ms. Matatov was a DACA recipient who received her social security number in or around 2011.

55. Upon information and belief, Equifax subjected Ms. Matatov's dispute to its arbitrary procedure that it does not conduct a reinvestigation of disputes made by consumers whose social security numbers were issued after June of 2011.

56. Equifax automatically caused the "deceased letter" to be sent to Ms. Matatov as a result of an ID Scan Alert based on the issuance date of her SSN in 2011.

57. Equifax either negligently or willfully caused the "deceased letter" to be automatically sent by dispute agents based only on the date of the SSN in June of 2011 or later.

58. Although the "deceased letter" may have been the wrong form letter to send in response to the ID Scan Alert, it is Equifax's policy and procedure to not promptly reinvestigate Ms. Matatov's dispute or send the dispute to the furnisher that violates the FCRA.

59. Equifax is required to conduct a reinvestigation and transmit the dispute to the furnisher within the time permitted under 15 U.S.C. § 1681i.  Equifax is not permitted to condition to discharge of the grave responsibility.

60. Upon information and belief, Equifax regularly sells consumer reports to its customers in the banking and debt collection industries with as little as a name and any previous address.

61. Despite the onerous requirements that Equifax imposed upon Plaintiff to produce a confidential report that did not exist from the SSA and prove that she was in fact, alive, Equifax readily sold one or more consumer reports that included Plaintiff's credit information without asking the customer(s) to provide Plaintiff's social security number.

62. Upon information and belief, Equifax sold Ms. Matatov's consumer report to its third-party subscriber and customer, Cisco Credit, without verifying that her social security number belonged to a living person.

63. Upon information and belief, Equifax also sold Plaintiff's consumer information to one or more third parties while reporting that her social security number belonged to a

deceased person.

64. In or around the beginning of 2020, Plaintiff applied for and was denied a Chase credit card. Upon information and belief, Plaintiff's credit application was denied in whole or in part because of the erroneous information in Equifax's credit file.

65. In or around 2013, Plaintiff applied for a student loan with Mountain America Credit Union and was denied. Consequently, Plaintiff was not able to pursue her dream of earning a college degree.

66. Upon information and belief, Plaintiff's credit application was denied in whole or in part because of the erroneous information in Equifax's credit file.

67. Upon information and belief, Equifax continues to associate a variety of consumer credit information with Plaintiff's personal identifiers while simultaneously alleging that her social security number belongs to a deceased person.

68. Upon information and belief, Equifax knowingly maintains unreasonable and deficient procedures to avoid the expense of conducting reinvestigations of consumer disputes.

69. Upon information and belief, Equifax knowingly maintains unreasonable and discriminatory procedures for avoiding reinvestigation of disputes for consumers whose social security numbers were issued after June of 2011.

70. Moreover, Defendant unreasonably opts for consumers to undergo the onerous and unjustified verification of their identity through the SSA to avoid conducting a reasonable investigation of the information itself.

71. It is wholly unreasonable for Defendant to shift the burden of ensuring maximal

accuracy or conducting a reasonable reinvestigation of credit information to individual consumers, of which Equifax has been on notice for many years.

72. Further, Equifax has no right to a consumer's confidential social security benefits report even if it were relevant to any dispute.

73. Equifax's conduct unreasonably deprives consumers who recently obtained their social security numbers, mostly likely immigrants, new citizens, and people in fear of violence or identity theft, of their right to have a prompt reinvestigation of their consumer reporting disputes, and to have the dispute transmitted to the furnisher.

74. Equifax's actions have directly injured the Plaintiff and the putative class by depriving them of the prompt reinvestigation of their disputes to which they are entitled, failing to communicate their disputes to the furnishers, and delaying or failing to resolve the disputes and communicating the results to the Plaintiff and the class, wasting their time by instructing them to obtain a confidential SSA report that had no bearing on the investigation, and discriminated against a class members based solely on the date of the issuance of their SSNs.

75. Equifax's conduct was willful and/or in reckless disregard of the Plaintiff's and the putative class member's rights because it had enough information to perform the reinvestigations and communicate the dispute to the furnishers, it knew that it had no right to refuse or delay, it implemented the ID Scan Alert that prohibited an investigation prior to conducting an investigation without any authority to do so in the FCRA.

76. Equifax's conduct would give rise to causes of action at common law including invasion of privacy, defamation, disclosure of private facts, and negligence.

## CLASS ALLEGATIONS

77. Plaintiff incorporates the above paragraphs of this Complaint as though fully stated herein.

78. **The 1681i Class.** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class (the "Class") initially defined as follows:

All consumers residing in the United States who were the subject of a consumer report (1) in the five years preceding the date of class certification, (2) who sent a dispute to Equifax about an inaccurate item reporting on the consumer's Equifax report; (3) for whom Equifax sent a form letter requiring the consumer to obtain a "Report of Confidential Social Security Benefits" from the Social Security Administration. **Numerosity.** Fed. R. Civ. P. 23(a)(1). Upon information and belief, the Plaintiff alleges that Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published, emailed and/or mailed notice.

79. **Common Questions of Law and Fact.** Fed. R. Civ. P.   23(a)(2). Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

        a. Whether Equifax conducted a reasonable reinvestigation of the Plaintiff and putative class member disputes;

        b. Whether Equifax actually associated the Plaintiff and putative class

members' social security numbers with deceased persons;

c.  Whether the Social Security Administration was the actual source of the information associating the consumer with a deceased social security number;

d.  Whether Equifax was reasonable in refusing to conduct a reinvestigation without first requiring the Plaintiff and putative class members to provide additional information;

e.  Whether Equifax had sufficient information to commence a dispute reinvestigation in response to the Plaintiff's and putative class members' disputes;

f.  Whether Equifax invaded the Plaintiff's and putative class members' privacy;

g.  Whether Equifax published accurate information about the Plaintiff and putative class members to third parties;

h.  Whether Equifax defamed the Plaintiff and putative class members;

i.  Whether Equifax published private facts about the Plaintiff and putative class members;

j.  Whether Equifax had control over the conduct of its third-party contractors sufficient to fulfill its FCRA obligations;

k.  Whether Equifax's ID Scan Alert for consumers whose social security number was issued after June 2011 was discriminatory;

l.  Whether Equifax was justified in forcing the consumer to obtain

information it requested from the Social Security Administration;

m. Whether the type of information that Equifax required of the consumer was the type of information that was relevant to whether the consumer was deceased;

n. Whether Equifax informed the furnisher of the social security information about the consumer dispute;

o. Whether Equifax improperly shifted the burden of proving that its report of social security information was inaccurate onto the consumer;

p. Whether Equifax had notice that its ID Scan Alert was flawed;

q. Whether Equifax's violation was willful and/or in reckless disregard of the consumer's rights.

r. What Equifax did with the Plaintiff's and putative class members' confidential social security information.

80. **Typicality.** Fed. R. Civ. P.  23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Upon information and belief, Equifax sent consumers who were disputing inaccurate credit information the same form letter; Equifax indicated that it would not commence the reinvestigation of the disputed reporting until the consumer obtained information from the Social Security Administration. For class certification purposes, Plaintiff seeks only statutory and punitive damages. Plaintiff will only seek individual actual damages if Class Certification is denied. In addition, Plaintiff is entitled to the same relief as the members of the class.

81. **Adequacy.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; she retained counsel competent and experienced in such litigation; and she intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

82. **Predominance and Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication for the controversy. It would be virtually impossible for the members of the Class to effectively redress the wrongs done to them on an individual basis.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the Class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

83. **Injunctive Relief Appropriate for the Class.** Fed. R. Civ. P. 23(b)(2). Class certification is appropriate because Defendant has acted on grounds that apply generally to the Class, making it appropriate to award equitable and injunctive relief with respect to Plaintiff and the Class members.

### CLAIM I (CLASS CLAIM)
### Violations of 15 U.S.C. § 1681i(a)(1)(A)
### Failure to conduct a reasonable reinvestigation

84. Plaintiff bases Claim I on the facts alleged in the foregoing paragraphs that demonstrate that Equifax failed to conduct a reasonable reinvestigation of the Plaintiff's and putative class members' disputes.

85. The foregoing facts establish that Defendant willfully violated 15 U.S.C. § 1681i(a)(1)(A) as to Plaintiff and the putative class members when it failed to conduct a reasonable reinvestigation of their disputes based on its policies and procedures.

86. Specifically, Defendant established a policy and procedure designed to deprive a certain group of disputing consumers from their FCRA rights to a reasonable reinvestigation and communication of their disputes to the furnishers.

87. Equifax had no right to refuse to conduct a reinvestigation of the Plaintiff's and putative class members' disputes and instead unreasonably shifted the duties imposed on consumer reporting agencies by the FCRA to Plaintiff and the putative class members.

88. As a direct result of Defendant's violations of 15 U.S.C. § 1681i(a)(1)(A), Plaintiff and each putative class member suffered injuries and resulting damages, including but not limited to: deprivation of a reasonable reinvestigation promised by the FCRA, negative credit impact due to the presence of inaccurate credit items on their consumer reports, credit denials, emotional distress, mental anguish, stress, embarrassment, and loss of time.

89. Defendant's conduct, actions, and inactions were willful, rendering the Defendant liable for punitive damages to be decided by the court pursuant to 15 U.S.C. § 1681n.

90. In the alternative, Defendant was negligent, rendering the Defendant liable for

- 16 -

actual damages under 15 U.S.C. § 1681o.

91.  The Plaintiff and each Class member are entitled to statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to § 1681n and or § 1681o.

## CLAIM II (CLASS CLAIM)
### Violations of 15 U.S.C. § 1681i(a)(2)(A)
### Failure to promptly provide notice of dispute to the furnisher of information

92.    Plaintiff bases Claim II on the facts alleged in the foregoing paragraphs that demonstrate that Equifax failed to promptly provide notice of the dispute and all relevant information to the furnisher of the information within 5 business day of receipt of the Plaintiff's and putative class members' disputes.

93.    The foregoing facts establish that Defendant willfully violated 15 U.S.C. § 1681i(a)(2) as to Plaintiff and the putative class members when Equifax failed to notify the furnishers of their disputes based on its policies and procedures.

94.    Specifically, Defendant established a policy and procedure designed to deprive a certain group of disputing consumer from their FCRA rights to a reasonable reinvestigation and communication of their disputes to the furnishers.

95.    Equifax had no right to refuse to provide the dispute information to the furnishers and instead unreasonably shifted the duties imposed on consumer reporting agencies by the FCRA to Plaintiff and the putative class members.

96.    As a direct result of Defendant's violations of 15 U.S.C. § 1681i(a)(2), Plaintiff and each putative class member suffered injuries and resulting damages, including but not limited to: deprivation of their rights to have the dispute communicated to the

furnishers, whose only liability under the FCRA arises once it receives the dispute from the CRA.

97.     Plaintiff and the putative class members were injured because they were deprived of reasonable reinvestigation promised by the FCRA when the furnisher was unable to learn of and correct the inaccurate reporting, resulting in negative credit impact due to the presence of inaccurate credit items on their consumer reports, credit denials, emotional distress, mental anguish, stress, embarrassment, and loss of time.

98.     Defendant's conduct, actions, and inactions were willful, rendering the Defendant liable for punitive damages to be decided by the court pursuant to 15 U.S.C. § 1681n.

99.     In the alternative, Defendant was negligent, rendering the Defendant liable for actual damages under 15 U.S.C. § 1681o.

100.    The Plaintiff and each putative class member are entitled to statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to § 1681n and or § 1681o.

### CLAIM III (INDIVIDUAL CLAIM)
### Violations of 15 U.S.C. § 1681e(b)

101.    Plaintiff incorporates the above paragraphs of this Complaint as though fully stated herein.

102.    The foregoing facts establish that Defendant willfully violated 15 U.S.C. § 1681e(b) as to Plaintiff when it failed to maintain reasonable procedures to ensure maximal accuracy of the consumer information it assembles and includes in the consumer reports it

sells to third parties for a profit.

103.      Specifically, Defendant failed to ensure that the Commonwealth Financial Systems collections account was accurate before publishing it in the Plaintiff's consumer report.

104.      In addition, if there was in fact social security information that Equifax purchased from a third-party vendor that indicated Ms. Matatov's social security number was associated with a deceased person, Equifax had no procedures in place to assure that such information was accurate before including it in her credit file.

105.      Instead of maintaining reasonable procedures to ensure maximal accuracy, when the Defendant learned that the Commonwealth Financial Systems collections account was inaccurate, Defendant unreasonably shifted the duties imposed on consumer reporting agencies by the FCRA to Plaintiff upon receiving her dispute.

106.      Further, Defendant violated 15 U.S.C. § 1681e(b) by providing consumer credit information to its customer(s) **after** receiving the dispute without first taking any steps to ensure that such information was maximally accurate.

107.      In addition, Defendant violated 15 U.S.C. § 1681e(b) by providing Plaintiff's consumer report to third parties if it did, in fact, receive notice that the Plaintiff's social security number was associated with a dead person, before verifying that the social security number did in fact belong to her, who was alive.

108.      As a direct result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered injuries, including but not limited to: reduction in credit standing, credit denials, emotional distress, mental anguish, stress, embarrassment, physical injuries and sickness,

and waste of time.

109.      Defendant's conduct, actions, and inactions were willful, rendering the Defendant liable for punitive damages to be decided by the court pursuant to 15 U.S.C. § 1681n.

110.      In the alternative, Defendant was negligent, rendering the Defendant liable for actual damages under 15 U.S.C. § 1681o.

111.      The Plaintiff and each Class member are entitled to statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to § 1681n and or § 1681o.

## JURY DEMAND

112.      Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kenia Matatov respectfully requests Certification of a class of consumers defined herein, and entry of judgment against Defendant for the following:

A.  Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

B.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

C.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n(c) and 1681o(b);

D.  Actual damages, statutory damages, punitive damages, attorneys' fees and costs, in the alternative, for all claims if a Class is not certified;

E.   For Plaintiff's individual claim, she is entitled to individual actual damages, statutory damages, punitive damages, attorneys' fees, and costs, and

F.   All pre-judgment and post-judgment interest as may be allowed under the law; and

G.   Any other relief that this Court deems appropriate.

RESPECTFULLY SUBMITTED,

Dated: July 8, 2021.                    THE CONSUMER JUSTICE LAW FIRM

                                        By:*/s/ David A. Chami*
                                        David A. Chami
                                        AZ Bar No. 027585
                                        Attorney for Plaintiff

- 21 -